**Margaret KROHN, Plaintiff–Appellant,**

v.

**HURON MEMORIAL HOSPITAL, Defendant–Appellee.**

No. 97–2225.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1998.

Decided April 1, 1999.

---

Christopher A. Hajeck (argued and briefed), Gault, Davison, Bowers, Hill, Parker & McAra, Flint, MI, for Plaintiff–Appellant.

Scott C. Strattard (argued and briefed), Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, MI, for Defendant–Appellee.

Before: NELSON, SILER, and DAUGHTREY, Circuit Judges.

## OPINION

DAUGHTREY, Circuit Judge.

Plaintiff Margaret Krohn, a former employee of defendant Huron Memorial Hospital, was permanently disabled in an automobile accident but lost the opportunity to secure long-term disability benefits, she alleges, due to the hospital's breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* She appeals the district court's grant of summary judgment to the defendant, contending that the court construed the hospital's fiduciary duty too narrowly. We agree and conclude that the hospital is liable for failing (1) to respond adequately to a request by the plaintiff's husband for information about plan benefits and (2) to alert its long-term-disability insurer that the plaintiff had made an application for benefits. For these reasons, we reverse the district court's judgment and remand.

### PROCEDURAL AND FACTUAL BACKGROUND

The parties do not dispute the relevant facts. Margaret Krohn was employed as a registered nurse by Huron Memorial Hospital at the time of a March 1992 automobile accident that caused a closed-head injury and resulted in her permanent disability. At the time of Krohn's injury, she was eligible for both short-term and long-term disability benefits through Huron Memorial Hospital's disability policies. Under the short-term disability plan, a participant became eligible for benefits on the 15th day of an injury or illness in the amount of 60 percent of weekly earnings, up to a maximum of $200.00 per week, for up to 26 weeks. Under the long-term disability policy, a participant became eligible for benefits on the 180th day of an injury or illness in the amount of 60 percent of monthly earnings, up to a maximum of $3,000 per month. Based on Krohn's age at the time of the accident (42), she would have been entitled to disability benefits until age 65, for a total of 23 years.

When the long-term benefits first became available in 1988, some four years before Krohn's injury, Frances Neville, a personnel assistant at Huron Memorial, met individually with each nurse to provide them with a booklet regarding the long-term disability policy and orally explain the plan. Krohn later testified that she did not recall receiving the book, but conceded that it was "very possible" that she did receive it.

Within two weeks of Krohn's accident, her husband, James Krohn, had a conversation with Nancy Stanton, a personnel assistant at Huron Memorial Hospital, and inquired about the benefits to which his wife was entitled as a result of her injury and inability to work. According to Stanton's deposition testimony regarding that conversation, she

... would have told him [Krohn] that— if she was going to be out for more than 14 days, that she would have been eligible for short-term disability, and that it would be 60 percent of her gross weekly wage up to a max of $200 for 26 weeks.... And I had told him that based on my handling of short-term disability, that employees that were involved in automobile accidents normally would opt for the car insurance, and that they normally paid a higher rate. I also told him in the abstract that you cannot collect any money from the short-term disabilities if you're collecting it from other companies.

At the conclusion of this meeting, Stanton gave James Krohn a form entitled Initial Application For Disability Benefits, which he took with him.

James Krohn completed and returned the application for disability benefits form that Stanton had given him. He filled in the "employee's statement" section and had his wife's physician complete the section for the "physician's statement." The doctor indicated on the form that he anticipated that Margaret Krohn could return to

work within five months. Although James Krohn testified in deposition that he had no recollection of completing the application or returning it to Stanton, the parties nonetheless agree that it is his handwriting. Stanton testified that James Krohn returned the application form to her on or around April 8, 1992, and informed her at that time that Margaret Krohn had decided to collect the lost-wages benefits provided under her car insurance policy. Stanton said that she then placed the application, which had been completed except for the employer verification statement, in Krohn's employee file and did not submit the application form to Huron Memorial's long-term disability insurance provider, UNUM Life Insurance Company of America, as a claim for benefits.

Three years later, Krohn's benefits under her auto insurance policy expired, and she applied for the long-term disability benefits provided by UNUM. UNUM denied her claim as untimely, pointing out that its long-term disability policy required that notice of a claim be given to it or its authorized agents within 30 days of the occurrence of a loss covered by its policy, or as soon thereafter as reasonably possible. Under the terms of the UNUM policy, a claimant had to provide UNUM with proof of disability, including the occurrence, the character, and the extent of loss, within 90 days of the completion of the 180–day elimination period that had to elapse before benefits became payable. Failure to provide such proof within the 90–day time period "w[ould] not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided that proof [wa]s furnished as soon as reasonably possible and in no event later than one year from the time proof [wa]s otherwise required." Instructions provided by the insurer to the plan administrator instructed the plan administrator to complete and submit a long-term disability claim form "four to six weeks before the end of the employee's elimination period or earlier if possible."

Based on these provisions, UNUM denied Krohn's application for long-term disability benefits, insisting that the elimination period for an injury on March 21, 1992, would have been satisfied on September 17, 1992. Thus, because UNUM did not receive Krohn's application for benefits until April 28, 1995, UNUM concluded that the claim was not timely submitted under its policy.

This action was originally filed in state court against both UNUM and Huron Memorial Hospital. With Huron Memorial's consent, UNUM removed the suit to federal court, on the ground that plaintiff's claims were preempted by ERISA, and secured a grant of summary judgment in its favor, leaving Huron Memorial as the sole defendant. The district court also dismissed the plaintiff's state law claims.

Krohn and Huron Memorial then filed cross-motions for summary judgment on Krohn's ERISA breach-of-fiduciary-duty claim, in which she alleged that various acts and omissions by Huron Memorial caused her injury. The district court granted Huron Memorial's motion and entered summary judgment in its favor. From that order, Krohn now appeals.

## DISCUSSION

The parties agree that the UNUM long-term disability policy qualifies as an employee welfare benefit plan under ERISA and that Huron Memorial was the plan administrator and ERISA fiduciary. Plaintiff Krohn raises two arguments on appeal. First, she contends that the district court erred in concluding that Huron Memorial did not breach its fiduciary duty under ERISA by failing to disclose the availability of long-term disability benefits to her spouse when a request for benefit information was made on her behalf. Second, she contends that the district court erred in holding that Huron Memorial did not breach its fiduciary duty by failing to notify UNUM, its long-term-disability insurer, of her claim for benefits after her husband completed and returned the form

entitled Initial Application for Disability Benefits.

## A. The Duty to Inform

ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan. *See* 29 U.S.C. § 1104(a)(1); *Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir.1995). As we have previously explained, ERISA's fiduciary duty encompasses three components. *See Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1162 (6th Cir.1988). The first is a "duty of loyalty" which requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Id.* (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.1982)); *accord* 29 U.S.C. § 1104(a)(1) (requiring a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Second, ERISA imposes a "prudent person" fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man [sic] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *accord Berlin,* 858 F.2d at 1162. The prudent person standard, in combination with the duty of loyalty, "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Berlin,* 858 F.2d at 1162 (quoting *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984)). Finally, ERISA requires that a fiduciary "act 'for the exclusive purpose' of providing benefits to plan beneficiaries." *Id.* (quoting *Donovan,* 680 F.2d at 271).

Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), we have previously held that "[a] fiduciary must give complete and accurate information in response to participants' questions...." *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992); *accord Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445, 451 (6th Cir.1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."). We have also held that "[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.'" *Drennan,* 977 F.2d at 251 (quoting *Berlin,* 858 F.2d at 1163). Furthermore, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. *See Berlin,* 858 F.2d at 1163–64. In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled. *See In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1264 (3d Cir.1995).

Many of our sister circuits have held, more specifically, that once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire. *See, e.g., Shea v. Esensten,* 107 F.3d 625, 629 (8th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 297, 139

L.Ed.2d 229 (1997) (health maintenance organization had fiduciary duty to disclose financial incentive structure intended to reward primary care physicians who minimized referrals to specialists); *Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986, 991 (7th Cir.1993) (fiduciary duty to communicate material facts affecting interests of beneficiaries "exists when a beneficiary asks fiduciaries for information, and even when he or she does not"); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990) ("At the request of a beneficiary (and in some circumstances upon his own initiative), a fiduciary must convey complete and correct material information to a beneficiary."). ERISA's fiduciary duty provisions incorporate the common law of trusts, which governed benefit plans before ERISA's enactment. *See Varity*, 516 U.S. at 496, 116 S.Ct. 1065. As set out in the Restatement (Second) of Trusts, a trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person." Restatement (Second) of Trusts § 173, comment d (1959). Moreover, we have been admonished by the Supreme Court to interpret the trust-like fiduciary standards ERISA imposes "bearing in mind the special nature and purpose of employee benefit plans." *Varity*, 516 U.S. at 497, 116 S.Ct. 1065 (citations omitted). Accordingly, we agree with the conclusion of our sister circuits that the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir.1993).

■ These fiduciary duties to disclose and to inform govern the case before this court. First, Krohn claims that Huron Memorial, as a plan administrator, breached its fiduciary duty by failing to provide information about her entitlement to long-term disability benefits when her husband requested general information about the benefits to which she was entitled. Stanton concedes that she told plaintiff's husband only about short-term disability benefits. Huron Memorial argues that it was not required to provide information about long-term benefits for three reasons: (1) plaintiff did not specifically request information regarding long-term disability benefits; (2) all of the parties expected plaintiff to return to work before she would have become eligible for long-term disability benefits; and (3) Huron Memorial had already informed plaintiff of the availability of long-term disability benefits by providing her with a summary plan description and an employee handbook four years earlier. The district court agreed, focusing particularly on the fact that the physician's statement included on the application for disability benefits form indicated his expectation that the plaintiff would be able to return to work in less than five months, at which point she would not yet be entitled to long-term disability benefits because the 180–day elimination period would not have run. In reaching this conclusion, it is clear to us, the district court was not focusing on the "big picture" presented by this case. Other courts have employed broader vision in similar cases.

The facts in *Eddy*, for example, are analytically quite similar to those in the case at bar. There, the plaintiff faced termination of his benefits in a group health insurance plan just as he was approaching costly medical expenses resulting from his HIV-positive status. Eddy testified that when he called his insurer and inquired about his conversion rights under the policy, a representative of the insurer advised him that he had no rights under the policy to continue his coverage. Based on this representation, he did not apply for conversion and therefore lost his health insurance coverage. Witnesses for the insurer later testified that Eddy did have the right to "convert" his insurance coverage, which

would have enabled him to retain his health and life insurance benefits. The district court held that Eddy had not demonstrated that he asked whether he could "convert" his coverage, to which he was entitled, as opposed to "continuing" his coverage, to which he was not entitled because his employer had canceled the group plan. The District of Columbia Circuit reversed, holding that "[r]egardless of the precision of his questions, once a beneficiary makes known his predicament, the fiduciary 'is under a duty to communicate ... all material facts in connection with the transaction which the trustee knows or should know.'" *Eddy*, 919 F.2d at 751 (quoting Restatement (Second) of Trusts § 173, comment d (1959)).

Similarly, the Third Circuit in *Bixler* held that "while the beneficiary may, at times, bear a burden of informing the fiduciary of her material circumstance, the fiduciary's obligations will not be excused merely because she failed to comprehend or ask about a technical aspect of the plan." *Bixler*, 12 F.3d at 1300.

Like Eddy, Krohn's failure to specifically request information from Huron Memorial about long-term disability benefits did not relieve the hospital of its fiduciary duty to provide complete information about her disability insurance options. When James Krohn made the request for information, less than two weeks had elapsed since the plaintiff's car accident, and no one knew how long it would be before plaintiff could work again. Huron Memorial argues that it was unforeseeable that the plaintiff would need long-term disability benefits, because her physician later indicated on the application for disability benefits form—received by Huron Memorial after it had given Krohn's husband information about her benefits options—that he anticipated that plaintiff would be able to return to work within five months. We are simply unpersuaded by that argument. When James Huron first requested information about benefits, a complete prognosis had not been made, let alone an estimation about the duration of his wife's disability. Even when the hospital received the form on April 8, 1992, indicating that plaintiff would miss five months of work, they had merely an estimate made less than two weeks after a serious injury, which certainly did not preclude the possibility that plaintiff's injury would require six or more months of absenteeism from work.

Furthermore, two weeks later, on April 22, 1992, Krohn's physician provided Huron Memorial with an additional written statement indicating that Krohn would be unable to work for six months from that date, or until late October 1992, which was seven months after her initial injury. Based on this information, Huron Memorial knew that Krohn would probably be eligible for long-term disability benefits for at least one month. Perhaps anticipating her lengthy absence, the hospital hired a nurse to replace Krohn approximately two weeks after receiving the new prognosis. Thereafter, the plaintiff's prognosis got worse rather than better. Some seven months after Krohn's accident, her physician provided Huron Memorial with a statement indicating that the plaintiff would be unable to return to work for at least another year, or a total of 19 months after her accident. As it turned out, the plaintiff was so severely disabled that she was never able to resume work.

Our review of the record thus reveals that Huron Memorial received notice repeatedly that the plaintiff would be eligible for and would need long-term disability benefits. Furthermore, Huron Memorial knew that in order to secure her right to long-term disability benefits, Krohn was required by the UNUM policy to submit a claim within 30 days of the occurrence of a loss covered by its policy, or as soon thereafter as is reasonably possible, and to provide proof of disability within 90 days of September 17, 1992, the date on which the 180-day elimination period ended. A prudent fiduciary acting in the best interest of its beneficiary would have advised Krohn that failure to submit a claim and proof of

loss to UNUM in a timely fashion would render her ineligible to receive long-term disability benefits.

■ Huron Memorial stresses its belief that the information Stanton conveyed to the plaintiff and her husband regarding the superiority of car insurance benefits was true. That argument is unpersuasive for two reasons. First, based on the fiduciary duties outlined above, the information provided by a fiduciary in response to a beneficiary's request for information need not be false to constitute a breach of fiduciary duty. Instead, Huron Memorial's failure to provide information about the availability of long-term benefits breached its duty to disclose and inform because it failed to "give complete and accurate information in response to participants' questions...." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992). Second, it is clear, based on the facts before us, that Huron Memorial's statements regarding the general superiority of car insurance lost-wages benefits, as opposed to the disability benefits provided by Huron Memorial, were misleading, incomplete, and, for many potential beneficiaries such as Krohn, inaccurate. Although benefits available under the plaintiff's car insurance policy were ostensibly more generous than those provided by UNUM, her entitlement to lost-wage benefits under the auto policy terminated three years after her accident, whereas the UNUM benefits would have continued until she reached age 65—some 23 years, based on her age at the time of the accident. The predicament in which plaintiff now finds herself, unable to work and without disability benefits, illustrates the short-coming of choosing her car insurance benefits over UNUM's long-term disability benefits.

■ In what we perceive to be its weakest argument, Huron Memorial contends that it had already informed plaintiff of the availability of long-term disability benefits by providing her with a summary plan description, an employee handbook,

and an individual meeting with Frances Neville, who explained the long-term disability plan. True, we have previously held that an ERISA plan fiduciary may satisfy its obligation to provide employees with a comprehensive explanation of the contents of the plan by distributing to employees an explanatory booklet which adequately explains the plan and its terms. *See Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir.1993). However, in *Electro–Mechanical* we also noted that ERISA additionally "imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms." *Id.; see also Eddy*, 919 F.2d at 750 ("A fiduciary's duty, however, is not discharged simply by the issuance and dissemination of these [summary plan descriptions] and notices."). Hence, Sixth Circuit precedent is directly contrary to Huron Memorial's contention. Providing a summary plan description several years before the request for information does not excuse the hospital from its duty to respond fully and accurately to later inquiries regarding benefits. Indeed, it would have been preferable for Huron Memorial to refer the plaintiff to her summary plan description or employee handbook to find the answer to her questions, and to have given her an additional copy if she had lost her own, than to have undertaken to provide such information and to have done so in such a careless and incomplete manner. Instead, Huron Memorial did not mention to plaintiff or her husband that a thorough explanation of benefits could be found in those documents, even though her husband's questions revealed his, and perhaps the plaintiff's, lack of awareness of where to find Krohn's benefit information. Accordingly, we reject Huron Memorial's argument that provision of a summary plan description discharged or fulfilled its obligation to provide complete material information upon plaintiff's inquiry.

■ Moreover, we conclude that Stanton's communication with plaintiff's

husband was a materially misleading response to his inquiry about benefits, in that there was a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding disability benefits to which she might be entitled. *See In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir.1995). Significantly, Huron Memorial continued to breach its fiduciary duties to plaintiff by remaining silent in the face of subsequent notification that plaintiff would need and be eligible for long-term disability benefits. We conclude that a plan administrator has "an affirmative duty to inform when [it] knows that silence might be harmful." *Bixler*, 12 F.3d at 1300.

Had the hospital adequately informed plaintiff about the availability of long-term disability benefits through its insurer, it is likely that she would have chosen a different course of action. In fact, a review of the UNUM policy suggests that if Krohn had timely applied for UNUM's long-term disability benefits, she might have been able to receive the higher auto insurance lost-wage benefits for three years and then received the lower UNUM long-term disability benefits after the other benefits were no longer available. The UNUM policy states, although not clearly, that the amount to which a beneficiary is entitled under its policy, the "gross monthly benefit," is to be offset by any "other income benefits," which in this case undoubtedly would have included the plaintiff's auto insurance benefits. Thus, it appears that Krohn could have made a timely application for long-term benefits under UNUM's policy, received her benefits under the auto insurance policy for three years, which would have constituted an offset against any benefits to which she was entitled from UNUM, and then received benefits from UNUM after she was no longer entitled to car insurance benefits, until she reached 65 years of age. At the very least, if fully informed of her options, Krohn might have opted to forego three years' worth of the slightly higher benefits

provided by her car insurance, knowing that there was a chance that her disability might extend more than three years from the date of her accident, in favor of the long-term benefits available under the UNUM policy. In either case, knowledgeable about Krohn's situation and armed with periodic updates about her disability status, Huron Memorial owed Krohn a duty to inform her—carefully, completely, and accurately—of the long-term disability benefits to which she was entitled through her employer, so that she could weigh her options and make informed decisions. This the hospital failed to do. We conclude, therefore, that the defendant is liable for the lost benefits that the plaintiff has sustained.

## B. The Duty to File

Krohn also claims that Huron Memorial breached its fiduciary duty by failing to take action on her application for benefits form. The district court disagreed, holding that James Krohn's comment at the time he returned the form—to the effect that the plaintiff intended to file for benefits under her auto insurance policy rather than the hospital's medical policy—rendered his return of the form a nullity. Thus, the court concluded, Huron Memorial was under no duty to notify its long-term disability insurer that Krohn had submitted the form. We conclude that in making this call, the district court was plainly in error.

We first consider the provisions of the long-term disability policy issued by UNUM to Huron Memorial, which is the written instrument pursuant to which this employee benefit plan was established and maintained, as required by ERISA. *See* 29 U.S.C. § 1102(a)(1); *Musto v. American General Corp.*, 861 F.2d 897, 900–01 (6th Cir.1988). The UNUM policy provides that the insurer must receive written notice of a claim within 30 days after the occurrence of a loss covered by the policy, at which time UNUM would furnish the

client with forms for filing proof of loss. UNUM further instructed the plan administrator to file a completed long-term disability benefits claim form with UNUM at least four to six weeks before the end of the claimant's elimination period. Thus, under the terms of the plan, Huron Memorial was obligated to file plaintiff's application for benefits with UNUM without second-guessing her intentions in returning the form or her eligibility for benefits. In essence, Huron Memorial did not send plaintiff's application because it assumed that plaintiff would be ineligible for long-term benefits, given her decision to receive benefits from her auto insurer. As noted above, however, that assumption is irrelevant because, based on the language of UNUM's policy, it appears that any benefits received from another source, such as the plaintiff's car insurance, would simply reduce the UNUM plan benefits. In any event, it was not Huron Memorial's prerogative to make such an eligibility determination. The hospital's obligation was clear from the terms of the policy and as a matter of its fiduciary status.

Furthermore, in that fiduciary status, Huron Memorial had a duty either to send UNUM the application for benefits, which plaintiff's husband and physician had taken the time to complete and return, or to clarify the plaintiff's intentions in returning the form. Instead, the hospital carelessly assumed that the completion and return of the application form was meaningless and, therefore, rendered it meaningless in fact by failing to send it to UNUM. Huron Memorial's inaction was particularly egregious in light of its previous incomplete, misleading, and potentially erroneous response to James Krohn's request for information about his wife's disability benefits options. Had Huron Memorial taken the appropriately cautious approach by sending the plaintiff's application to UNUM, UNUM undoubtedly would have sent her forms for submitting proof of loss, which might have prompted her to submit such proof or, at least, to obtain further information from her employer or UNUM, which in turn might have remedied the inadequate information Huron Memorial had previously given her husband. For this reason, too, we find that the district court erred in granting summary judgment to the hospital.

## CONCLUSION

ERISA imposes substantial duties upon fiduciaries of employee benefit plans, including the duty to respond fully and adequately to inquiries about employee benefits and to act in accordance with written plan instruments. We hold that Huron Memorial breached these duties by failing to provide plaintiff with pertinent information about the availability of long-term disability benefits and by failing to submit her application for disability benefits to its long-term disability insurer. We therefore REVERSE the order of the district court granting summary judgment to the defendant and REMAND the case to the district court to determine the extent of plaintiff's damages and to enter judgment in her behalf in that amount.