**Roy BRANDENBURG; et al., Plaintiffs,**

**Bryan M. Taulbee, beneficiary of Langley Taulbee; Amanda L. Taulbee, beneficiary of Langley Taulbee, Plaintiffs–Appellants,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 00–5766.

United States Court of Appeals, Sixth Circuit.

Jan. 22, 2002.

Before KEITH, KENNEDY, and BATCHELDER Circuit Judges.

BATCHELDER, Circuit Judge.

Bryan and Amanda Taulbee ("the Taulbees"), the children of Langley ("Taulbee"), appeal the district court's order granting summary judgment against them on their claim against Aetna Life Insurance Company ("Aetna")[1] for $50,000 in benefits from their deceased father's life insurance policy. The Taulbees claim that their father was entitled to a waiver of premiums on the life insurance policy after he was injured in a head-on car crash. Because we conclude that there are no

material facts in dispute and that neither Taulbee nor his children ever complied with the requirements of the insurance policy at issue, we will affirm the judgment of the district court.

Taulbee worked for a coal mine in Kentucky called Arch on the North Fork ("Arch"). Arch maintained an ERISA Plan for its employees, which included both group life insurance—the Term Life Plan—and group disability insurance—the Temporary Disability Income Plan. Both were underwritten by Aetna. The Term Life Plan, which provided life insurance benefits upon the death of a covered employee, contained a premium waiver benefit—entitled "Extended Insurance in the Event of Permanent and Total Disability"—that ensured continued life insurance coverage without payment of premiums during the period of permanent and total disability. The Term Life Plan explicitly required that an employee claiming the premium waiver benefit must provide written notice of that claim to Aetna within twelve months following the date that the employee ceased active work and proof that the employee had become totally and permanently disabled before termination of his employment with Arch. The Term Life Plan specifically defined "totally and permanently disabled" as meaning that the employee was and would continue to be unable to engage in any gainful occupation for which he was or might reasonably become fitted by education, training or experience, and specifically required that the employee provide proof to Aetna that he had been totally and permanently disabled continuously for at least nine months. Finally, the Term Life Plan provided that cessation of active work by an employee was deemed to be termination of employ-

---

1. This law suit started with eight plaintiffs, after the grant of summary judgment against them only the Taulbees remain for this appeal.

ment; termination of employment also terminated the term life coverage, absent the employee's receiving the premium waiver benefit.

The Temporary Disability Plan provided weekly benefits to a covered employee who was unable to perform "the duties of his occupation" because of illness or injury. Unlike the Term Life Plan, the Temporary Disability Plan did not require that a covered employee be unable to engage in any gainful occupation in order to be eligible for benefits, and the short-term benefits were available for a period of not more than 52 weeks. An employee claiming these benefits was required to submit to Arch specific forms entitled "Disability Benefit Notification" and "Benefit Request for Disability."

The Summary Plan Document ("SPD") separately explained each of these insurance plans and clearly distinguished the eligibility requirements for temporary benefits from those for the premium waiver benefit. The SPD also clearly explained what notice the employee claiming permanent and total disability must provide to the employer and to the insurance company in order to obtain the premium waiver benefit.

On July 11, 1990, Taulbee suffered severe head and shoulder injuries as a result of a head-on collision. There is no dispute that he did not work after that date. Taulbee applied for short-term disability income benefits and Aetna paid him short-term disability benefits under the Temporary Disability Plan from July 1990 through July 1991. The record contains no evidence that Taulbee ever specifically applied for any benefits other than the short term disability benefits. In particular, the record contains no evidence that Taulbee ever made a claim for the premium waiver benefit that would have continued his coverage under the term life in-

surance policy without the payment of premiums.

Arch closed its mine in October 1990. By letter dated October 26, 1990, Arch notified its employees that their "benefits will remain in effect until November 30, 1990, at which time, they will terminate." Arch terminated the Term Life Policy and the Temporary Disability Income Policy in December 1991.

Taulbee died on February 13, 1992. Some weeks later, Bryan Taulbee telephoned Arch and asked about life insurance benefits; his inquiry went unanswered. In August 1992, an attorney wrote to Arch and asked whether Taulbee had any life insurance through his job at Arch. The Taulbees say that Arch never responded to this inquiry. Nearly six years later, in June 1998, another lawyer wrote to Aetna demanding that Aetna pay $50,000 to the Taulbees. When Aetna refused, the Taulbees filed this action.

On cross-motions for summary judgment, the district court ruled that neither Taulbee nor his beneficiaries had provided Aetna proper notice under the Plan that Taulbee was making a claim for the premium waiver benefit. The court also ruled that the Taulbees' waiting eight years after Taulbee stopped working was an unreasonable delay as a matter of law. Finally, the district court found that Aetna would be materially prejudiced by the plaintiffs' late claim. This timely appeal followed.

## ANALYSIS

We review *de novo* a district court's decision to grant summary judgment, using the same legal standards the district court must use. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir.1999). If the plan clearly confers upon the plan administrator discretion to decide eligibility for benefits

or construe plan terms, we review a plan administrator's determination about eligibility under the "arbitrary and capricious" standard. *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709–10 (6th Cir.2000). We determine whether the plan clearly confers that discretionary authority upon the plan administrator by reading the plan's language in "an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 557 (6th Cir.1998). The district court declined to decide whether the language of the Plan at issue here conferred the requisite discretionary authority on Aetna, concluding that even under the most rigorous standard of review, the plaintiffs could not prevail. We review that holding de novo, *Hunter,* 220 F.3d at 709, and we conclude that the district court was correct in holding that the Taulbees cannot prevail here even if we apply a de novo standard of review.

The material facts are not in dispute. The parties do not argue about the claim Langley Taulbee made to Aetna which resulted in 52 weeks' payments of short term disability benefits. And the parties agree that Langley Taulbee made no specific claim for the premium waiver benefit. The Taulbees argue that notice to Aetna of the disability for which Langley Taulbee claimed and received benefits under the Temporary Disability Plan sufficed as notice to Aetna that Taulbee was also claiming permanent and total disability under the wholly separate Term Life Plan. In short, the Taulbees argue that the distinct requirements of the two separate plans were not substantively different; notice to Aetna of one kind of disability was notice of the other; Aetna should have known that Taulbee was making a claim for the premium waiver benefit; and Taulbee's term life insurance should therefore have continued in effect and the death benefit should have been paid upon Taulbee's death.

This case requires only that we interpret the language of the Term Life Plan and the Temporary Disability Plan. We hold that the Temporary Disability Plan and the Term Life Plan were entirely separate insurance policies, and that each had distinct requirements with which the claimant must comply in order to be entitled to its benefits. We further hold that the terms of the Temporary Disability Plan did not require that the claimant be unable to perform any gainful work in order to qualify for short-term benefits, but only that he be unable to perform his own job, and that such a disability is not equivalent to the permanent and total disability necessary for an employee to qualify for the premium waiver benefit under the Term Life Plan. The record establishes that Taulbee did not provide written notice of permanent and total disability to Aetna within twelve months following the date that he ceased active work for Arch. Neither did he provide to Aetna proof that he had become totally and permanently disabled before termination of his employment with Arch. Accordingly, we hold that the district court correctly concluded that neither Taulbee nor his children made a claim to Aetna for the premium waiver benefit during the notice period required by the Term Life Plan.

The Taulbees contend that even if no claim for the premium waiver benefit was timely made, under Kentucky law Aetna must demonstrate that it was prejudiced by the Taulbees' failure to make a timely claim. The district court held that while Kentucky's notice-prejudice rule was likely not preempted by ERISA, the eight year delay in making the claim for the premium waiver benefit effectively deprived Aetna of any opportunity to evaluate whether Taulbee had become permanently and totally disabled during the period of his em-

ployment with Arch, which constituted substantial prejudice to Aetna.

 We think it is not necessary to reach this issue. The Term Life Plan explicitly provides that in order to qualify for the premium waiver benefit, the employee must provide proof that he was permanently and totally disabled *during the period of his employment with Arch.* Nothing which the Taulbees have ever presented to Aetna in support of their claim satisfies this requirement. The Taulbees have therefore failed to establish that Taulbee qualified for the premium waiver benefit, regardless of when Aetna was given notice that the claim for the benefit was being made.

Finally, the Taulbees claim that our decision in *Krohn v. Huron Mem. Hosp.,* 173 F.3d 542 (6th Cir.1999) requires us to hold that Aetna had a duty to advise Taulbee that he qualified for and should make a claim for the premium waiver benefit, and having failed to do so, cannot now be heard to complain that Taulbee did not properly make such a claim. The record does not reflect that the plaintiffs ever raised this issue before the district court, and we decline to address this issue as well. *See Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 397 (6th Cir.1993).

For the reasons stated hereinabove, we affirm the judgment of the district court.