*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

WILLIAM BRISCOE, et al.,
           *Plaintiffs-Appellants,*

    *v.*

PREFERRED HEALTH PLAN, INC.,
           *Defendant-Appellee.*

No. 08-6480

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 02-00264—Charles R. Simpson, III, District Judge.

Argued: August 6, 2009

Decided and Filed: August 25, 2009

Before: CLAY, COOK, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David L. Leightty, SMITH, GREENBERG & LEIGHTTY, PLLC, Louisville, Kentucky, for Appellants. William D. Roberts, HALL, RENDER, KILLIAN, HEATH, & LYMAN, P.S.C., Louisville, Kentucky, for Appellee. **ON BRIEF:** David L. Leightty, SMITH, GREENBERG & LEIGHTTY, PLLC, Louisville, Kentucky, for Appellants. William D. Roberts, A. Courtney Guild, Jr., HALL, RENDER, KILLIAN, HEATH, & LYMAN, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

    CLAY, Circuit Judge. Plaintiffs William Briscoe, Laura Farley, Harold Smith, Lawrence Smith and Michael R. Straka are former employees of the defunct clothing manufacturer M. Fine & Sons Manufacturing Co., Inc. ("M. Fine"). Plaintiffs brought suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants Preferred Health Plan, Inc. ("PHP") and several former

M. Fine directors and officers, though only PHP remains in the case. Plaintiffs appeal the district court's order which granted their motion for summary judgment but limited PHP's liability to $10,679.59. For the following reasons, we **AFFIRM** the district court's judgment.

## BACKGROUND

At the time it filed for bankruptcy in June 2001, M. Fine provided health insurance to its employees through a self-funded health plan administered by PHP (the "Plan"). At issue throughout this litigation, including this appeal, has been PHP's role as the Plan's third-party administrator and the extent to which it acted as a fiduciary of M. Fine's employees. M. Fine's agreement with PHP dated August 1, 1999 (the "Agreement") described PHP's responsibilities as enrolling M. Fine employees in the Plan, investigating claims and determining claimants' eligibility for benefits, processing benefits, and issuing checks from a Plan bank account to pay the employees' benefits and PHP's administrative expenses. The Plan account was funded by direct contributions from M. Fine, employee contributions withheld by M. Fine from employee paychecks, and direct premium payments by former M. Fine employees receiving insurance through COBRA. The Agreement stated that "Final Authority of any benefit is with [M. Fine] (for any benefits fully self-funded) and the Insurer (for any benefits fully insured)." (R. 42 Ex. A at 3.) The Agreement contained a provision pursuant to which either party could terminate the Agreement if the other party became bankrupt or insolvent.

M. Fine adopted a Plan Document that formally set forth the terms of the Plan for its employees. The Plan Document specified that PHP was the "Plan Supervisor," who "will provide technical services and advice in connection with the operation of the coverage and performing other functions." (R. 42 Ex. B at 49.) According to the Plan Document, M. Fine was the "Administrator" and was "responsible for the day to day functions and management of the Plan." (R. 42 Ex. B at 49.) M. Fine was also the Plan's "Named Fiduciary," with "the authority to control and manage the operation and administration of the Plan, to interpret the terms and provisions of the Plan and to make final determinations as to participants' eligibility or benefits under the Plan." (R. 42 Ex. B at 49.)

In early March 2001, as it edged toward bankruptcy, M. Fine stopped depositing funds into the Plan account, after regularly making its monthly payments until that time. PHP's chief executive asserted in her deposition that PHP never informed M. Fine's employees that the Plan was becoming insolvent because PHP had a contractual obligation to notify only M. Fine, and that it was M. Fine's responsibility to notify Plan members that the Plan was on the verge of insolvency. By letter dated May 17, 2001, PHP informed M. Fine that it was terminating the Agreement effective immediately, citing PHP's "understanding of [M. Fine's] current financial circumstances[.]" (R. 42 Ex. C at 1.) PHP's letter noted that M. Fine currently owed the Plan account "$305,184.91 . . . to satisfy outstanding claim funding requirements, stop loss premiums, and administrative fees due" into the Plan account. (R. 42 Ex. C at 1.) Upon terminating the Agreement, PHP wrote itself a check out of the Plan account for $5,793.40, paid on June 13, 2001, to cover its own administrative fees in connection with the Plan. Enclosed in a letter dated June 6, 2001 from PHP to M. Fine were two checks: a check for $2,849.30 representing COBRA payments that employees had made directly to PHP for the months of April and May 2001, and a check for $2,036.99 that covered "the funds remaining in [the M. Fine] claim account." (R. 74 Ex. 9 at 1, 2.) According to the Plan account's monthly statement, as of June 30, 2001, the Plan was $320,552.04 in arrears on its outstanding obligations.

In their amended complaint filed September 10, 2003, Plaintiffs alleged that all Defendants–PHP and five individual officers and directors of M. Fine–were ERISA fiduciaries who breached their duties by failing to disclose to M. Fine's employees that M. Fine would be unable to fund its future health care liabilities, by failing to use funds derived from employees' paychecks to fund the Plan properly, and by wrongfully keeping part of the money remaining in the Plan account as an administrative fee. Plaintiffs also brought various state law claims.

In February 2004, Defendants moved for summary judgment, arguing that they were not Plan fiduciaries for ERISA purposes. On October 12, 2004, the district court granted Defendants' motion with respect to Plaintiffs' ERISA claim, and dismissed without prejudice Plaintiffs' state law claims. On appeal, this Court held that with respect to Plaintiffs' ERISA claim, the district court properly granted summary judgment in favor of M. Fine's former

directors and officers but improperly granted summary judgment in favor of PHP. *Bricsoe v. Fine*, 444 F.3d 478, 501 (6th Cir. 2006) ("*Briscoe I*").

In reversing the district court's grant of summary judgment to PHP, this Court in *Briscoe I* first summarized PHP's responsibilities with respect to the Plan, citing the relevant provisions of the ASA and the Plan Document:

> As the supervisor of the plan, PHP performed a variety of tasks, including processing claims, determining coverage and eligibility, and making payments to eligible employees. In a typical case, PHP would receive a claim from a healthcare provider, process that claim to determine whether it was covered by [M. Fine's] plan, and, if the claim was covered, PHP would advise [M. Fine] on a weekly basis of the money that needed to be deposited into the account from which PHP paid the service providers. That account, which was in the names of both [M. Fine] and PHP, was financed from the general assets of [M. Fine] and had no minimum balance, such that the account was designed to "zero out" after PHP dispersed the designated set of payments. In addition to its claims-handling responsibilities, PHP was charged with enrolling [M. Fine] employees in the self-funded plan, a task that it continued to perform through March of 2001, at which time [M. Fine] became unable to meet its obligations under the plan.

*Id.* at 483-84. Based on this division of labor and the language in the Plan Document, this Court found that M. Fine was the plan administrator and named fiduciary for ERISA purposes, and that "the functions that PHP performed as a third-party administrator did not convert it into an ERISA fiduciary[.]" *Id.* at 488, 490. However, this Court also concluded that "[b]ecause PHP exercised control over plan assets, it qualifie[d] as an ERISA fiduciary to the extent that it did so." *Id.* at 494.

On remand, PHP moved for partial summary judgment, seeking a finding that, based upon this Court's holding in *Briscoe I*, PHP could potentially be held liable only for the losses to the Plan's funds after it terminated its contractual relationship with M. Fine. On January 29, 2007, the district court granted PHP's motion. The parties then filed dueling motions for summary judgment regarding PHP's liability, and on September 3, 2008, the district court granted summary judgment for Plaintiffs and awarded judgment in the amount of $10,769.59, the combined amount of the three payments PHP made out of the Plan account in June 2001. Plaintiffs timely appealed the district court's judgment, arguing on appeal that the district court erred in limiting the extent to which PHP could be held liable on their ERISA claim.

**DISCUSSION**

## I.      Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must draw all reasonable inferences in favor of the non-moving party. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Calumet Farm, Inc.*, 398 F.3d 555, 558-59 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## II.     Analysis

Under ERISA, a "fiduciary" must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[,]" and only for the purpose of providing benefits to beneficiaries and covering administrative costs. 29 U.S.C. § 1104(a)(1)(A). "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable" for damages caused by the breach. § 1109(a). ERISA forbids ERISA fiduciaries from, *inter alia*, "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" § 1106(a)(1)(D). The statute defines "fiduciary" as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

§ 1002(21)(A) (emphasis added).  In *Briscoe I*, this Court found that PHP fit within the first prong of this definition, because "[P]laintiffs have proffered sufficient evidence to demonstrate that PHP exercised control over the assets of [M. Fine's] healthcare plan still in PHP's possession when [M. Fine] became insolvent."  444 F.3d at 491-92.  This Court found that PHP did not exercise discretionary authority or control in managing the Plan, but did exercise a degree of authority over the disposition of the Plan's assets, and therefore qualified as a fiduciary.  *Id.*

In their appeal, Plaintiffs challenge the district court's order on remand granting PHP partial summary judgment and holding that *Briscoe I* limited PHP's potential liability.  Plaintiffs argue that *Briscoe I* held that PHP was a fiduciary throughout the life of the Plan, and therefore may be held liable for all losses caused by the breaches Plaintiffs identified in their amended complaint, including failing to warn Plan enrollees that their medical expenses might not be reimbursed.  Appellants' Br. at 23.

The district court's interpretation of *Briscoe I* was correct.  In *Briscoe I*, this Court noted that with respect to the fiduciary duty set forth in ERISA, 29 U.S.C. § 1002(21)(A), "several courts have focused on the phrase 'to the extent' in holding that [f]iduciary status . . . is not an all or nothing concept, and that they must therefore ask whether a person is a fiduciary with respect to the particular activity in question."  *Id.* at 486 (quotations and citations omitted).  Addressing PHP's role, the *Briscoe I* Court concluded that although "neither the terms of [the Agreement] nor its day-to-day operations gave PHP discretionary authority over plan management . . . , PHP's unilateral disposition of funds held in an account over which it exerted control makes it a fiduciary *to the extent that it exercised such control upon the termination of its relationship with the Company*."  *Id.* at 490 (emphasis added).  In other words, this Court held that PHP was only a fiduciary to the extent that it took specific actions with respect to assets under its control–a holding consistent with prior decisions of this Court.  *See Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (holding that the defendant "was an ERISA fiduciary as long as it exercised control over plan assets").  Having so limited PHP's fiduciary duty, the *Briscoe I* Court then specifically detailed the actions that PHP took with respect to those assets under its control:

> The plaintiffs in the present case have presented competent evidence establishing that PHP exercised control over assets in [M. Fine]'s

self-funded plan *by allotting to itself an administrative fee and returning the remaining funds after its relationship with [M. Fine] terminated.* On these facts, we hold that PHP exercised at least partial control over plan assets and, to the extent that it did so, qualifies as a fiduciary. Whether PHP actually breached any duty that it owed is a question that the parties may address on remand and one on which we offer no opinion.

444 F.3d at 494-95 (internal citations omitted) (emphasis added).

In short, the *Briscoe I* Court held that Plaintiffs had presented "competent evidence" that PHP had exercised control over assets, but only to the extent that PHP "allott[ed] to itself an administrative fee and return[ed] the remaining funds after its relationship with [M. Fine] terminated." *Id.* at 494. The assets involved in these three transfers totaled $10,679.59. No evidence exists in the record of any additional assets over which PHP exercised control upon terminating the Agreement. Plaintiffs allege that PHP improperly accepted COBRA payments and employees' withheld contributions after it became aware of the Plan's lack of funding, but the only evidence of the acceptance of such payments was the $2,849.30 in premiums that PHP received for the months of April and May 2001, an amount for which the district court already held PHP liable in the $10,679.59 judgment. There is also no evidence that PHP enrolled new employees after it learned of M. Fine's financial difficulties in March 2001; Plaintiff William Briscoe asserts in his deposition that he switched to the Plan in March 2001, but he does not provide evidence that this occurred after PHP learned of M. Fine's inability to fund the Plan, and there is no evidence that M. Fine ever deposited any withheld portion of his subsequent paychecks into the Plan account.

Plaintiffs argue that in addition to its liability for transferring Plan assets out of the Plan account, PHP should also be liable for more than $300,000 in unpaid benefits owed to Plan participants between March and May, because PHP's fiduciary duty required it to warn existing participants that the Plan was underfunded. Appellants' Br. at 11. To support their argument, Plaintiffs cite one decision of this Court and two from the Fourth Circuit–*Drennan v. Gen. Motors Corp.*, 977 F.2d 246 (6th Cir. 1992); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001); *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213 (4th Cir. 2005)–that are inapposite. Although the defendant fiduciaries in those cases were required to disclose material information to ERISA plan beneficiaries, those defendants were fiduciaries with discretionary authority over their plans' management–not fiduciaries solely

through the exercise of control over a plan's assets, as PHP was. *See Drennan*, 977 F.2d at 249-52; *Griggs*, 237 F.3d at 374; *Phelps*, 394 F.3d at 216. Plaintiffs cite no precedent for the proposition that a third-party administrator acquiring fiduciary status only by exercising of control over a plan's assets may be held liable for funds that were never contributed to the plan. Accordingly, this Court's holding in *Briscoe I* necessarily limited PHP's liability to the $10,679.59 it transferred from the Plan account, given the absence of evidence of any other assets under PHP's control at the time.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.